UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA JACKSON, <br><br> Plaintiff, <br><br> vs. <br><br> JOANN A. ALOE and NED ALOE, ET AL., <br><br> Defendants. | 2:20-CV-12918-TGB-CI <br><br> HON. TERRENCE G. BERG <br><br><br> **AMENDED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 41)** |

The Court entered its order denying Defendants' motion for summary judgment on March 15, 2023. ECF No. 38. On July 28, 2023, the Michigan Supreme Court issued its opinion in *Kandil-Elsayed v. F & E Oil, Inc.,* which adopted a new rule by holding that the "open and obvious" nature of a hazard is not relevant to duty. No. 162907, 2023 Mich. LEXIS 1148 (Mich. July 28, 2023). Instead, Michigan tort law now regards "open and obvious" as a question of breach and comparative fault. *Id.* at *38–42. In adopting this new rule, the Michigan Supreme Court abrogated *Lugo v. Ameritech Corp., Inc.,* 464 Mich. 512 (Mich. 2001). This Court had relied upon *Lugo* in granting partial summary judgment in favor of Defendants on the common law claim for premises liability

1

because under that authority, the "open and obvious" nature of the ice was an absolute bar to Plaintiff's recovery.

On August 14, 2023, Plaintiff moved for relief from judgment based on this change in the law. ECF No. 41. Defendants concurred, so the Court's previous grant of summary judgment to Defendants must be reconsidered, and the common law premises liability claim must proceed. ECF No. 45, PageID.462–63. The Court confirmed this concurrence in a status conference on November 13, 2023. Accordingly, the Court will amend its prior order as provided below. Further considerations of the open and obvious danger as it may be relevant to comparative fault and breach will be reserved for motions in limine or jury instructions as the case moves toward trial.

In February of 2020, Amanda Jackson fell on the icy walkway near the door of her rented home. Jackson was then renting from Joann and Ned Aloe, and she is now suing them for failing to properly maintain the home's sidewalk and gutter system. She says the defective gutter system and sidewalk allowed ice to build up and made the sidewalk unsafe to use. Because Jackson has shown that there are genuine issues for trial as to common law premises liability, whether the sidewalk was unfit for ordinary use, and, if so, whether the Defendants knew as much, Defendants' motion for summary judgment will be **DENIED**.

2

## I. BACKGROUND

In late May, 2019, Plaintiff Amanda Jackson agreed to rent a lake front home owned by Ned and Joann Aloe in Novi, Michigan. Pl's. Dep., ECF No. 31-3, PageID.164. Jackson moved into the home on August 1, 2019. *Id.* The lease was on a month-to-month basis and required, among other things, that Jackson "report immediately to the landlords any needed repair" and "keep the porch, deck, steps, and walks clear of ice, snow, and obstacles." Lease Agreement, ECF No. 31-2, PageID.155-56. Jackson testified that she shoveled and salted the sidewalk each time it snowed. ECF No. 31-3, PageID.165.

Viewing the home from the street, the main door is on the home's right side.[1] Just outside the door is a rectangular concrete pad approximately four feet long and six feet wide bounded by fences on the right and rear sides. *Id.* at PageID.169; *see also* Photographs, ECF No. 31-11, PageID.262-65. Against the fence on the right side of the concrete pad (opposite the door), there are large rolling containers for recycling and trash. ECF No. 31-11, PageID.262-65. A concrete walkway approximately four feet in width extends from the concrete pad to the street. *Id.* At the time of the accident, the walkway ran past the home's carport and gravel driveway.[2] *Id.*

---

[1] The relevant features are depicted in a set of photographs appended to Defendants' motion. *See generally* ECF No. 31-11.
[2] Sometime after Jackson was hurt, the sidewalk was repaved and the carport replaced with a garage.

On February 22, 2020, Jackson left the home around noon. ECF No. 31-3, PageID.169-170. Jackson says that she walked out the door and made it about two steps before she slipped on the icy sidewalk. *Id.* Jackson further testified that she did not notice the ice until she fell, and that the ice was slightly shiny and had begun to melt. *Id.* at PageID.171. Jackson characterized it as "black ice," explaining that it was "not white" but rather was "very much dark." *Id.*

Photographs taken about four hours later that same day show a large patch of ice centered on the seam in the concrete between the walkway and the concrete pad just outside the home's front door. The ice extends most of the way across the sidewalk and is slightly white in color in the center and clear towards the edges. *See generally* ECF No. 31-5.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. See *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

Jackson argues that the Aloes violated the duty imposed on them by MCL § 554.139, which sets out Michigan's implied warranty of

5

habitability and a landlord's duty to repair. Jackson also points to principles of common law premises liability.[3]

### a. *There is a genuine issue for trial as to Defendants' common law premises liability*

The Aloes argue that they cannot be liable to Jackson for common law premises liability because the ice represented an "open and obvious hazard." In July 2023, the Michigan Supreme Court abrogated case law providing that a landlord's duty did not extend to protecting against hazards that are "open and obvious." *See Kandil-Elsayed v. F & E Oil, Inc.*, No. 162907, 2023 WL 4845611 (Mich. July 28, 2023). Under the new rule, the "open and obvious" analysis is relevant to comparative fault (e.g., how much harm the plaintiff should have anticipated) and breach; these are questions of fact that must be determined by the jury, not the judge. *See e.g., Vacaj v. Allstate Ins. Co.*, No. 22-10223, 2023 U.S. Dist. LEXIS 138858, at *4–7 (E.D. Mich. Aug. 9, 2023) (Friedman, J.) (applying *Kandil-Elsayed* to a premises liability claim and denying summary judgment); *Decoster v. Dolgencorp, LLC*, No. 21-10896, 2023 U.S. Dist. LEXIS 138404, at *2 (E.D. Mich. Aug. 2, 2023) (Roberts, J.) (same); *Zarycky v. Costco Wholesale Corp.*, 2023 U.S. Dist. LEXIS 150577, at *7, 2023 WL 5512225 (E.D. Mich. Aug. 25, 2023) (Parker, J.) (same). Thus

---

[3] As Jackson did not number the claim (or claims) in her complaint, it is not altogether clear whether she seeks to assert only a single claim premised on MCL § 554.139, or an additional claim for common-law premises liability.

Defendants are not entitled to summary judgment as a matter of law on the common law claim.

Accordingly, Jackson's claim for a violation of the duty imposed by common law premises liability may proceed.

   b. *There is a genuine issue for trial as to Defendants' liability under MCL § 554.139*

A landlord is required by Michigan law to maintain the premises she rents in reasonable repair and fit for their intended use. The relevant statute provides that:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:
> (a) That the premises and all common areas are fit for the use intended by the parties.
> (b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenant[']s wil[l]ful or irresponsible conduct or lack of conduct.

MCL § 554.139. The parties to a lease agreement may agree to modify these statutory duties, but only where "the lease or license has a current term of at least 1 year." MCL § 554.139(2).

In *Allison v. AEW Cap. Mgmt., L.L.P.*, the Michigan Supreme Court recognized that the accumulation of ice and snow in a parking lot could trigger a landlord's duty under the statute. 481 Mich. 419, 430 (2008).

7

Other Michigan cases define the contours of this duty in the context of sidewalks, staircases, and other common features of residential rental properties. Throughout, this Court's analysis is guided by the statute's instruction that courts construe its protections liberally. MCL § 554.139(3).

Before reaching the merits of Jackson's claim, the Court considers the Aloes' argument that Jackson assumed responsibility for snow and ice removal under the terms of the lease agreement, thus excusing the Aloes from any liability under the statute. For this argument, the Aloes rely on *Magyar v. Barnes*, 2012 WL 975046 at \*1 (Mich. Ct. App. Mar. 22, 2012). There, the court rejected the § 554.139 claim of a tenant who had fallen on ice at a rental property because the tenant and landlord "agreed that the tenants would be responsible for the removal of snow and ice." *Id.* But, as Jackson points out, the very next sentence of the *Magyar* decision distinguishes that case from this one: "Moreover, the parties were allowed to modify this obligation under MCL 554.139(2) *because the lease was for one year*." *Id.* (emphasis added). The lease in this case was for a month-to-month term, rendering *Magyar* inapplicable.

Jackson notes that her agreement with the Aloes was a month-to-month lease. *See* Lease Agreement, ECF No. 31-2, PageID.157. So, she says, although the lease purported to hold Jackson responsible for snow and ice removal and to release the Aloes from liability from any "condition in or upon the premises, including . . . water, snow, or ice," *id.*

8

at PageID.156, that attempted modification of the Aloes' statutory duty was ineffective because the lease term was not for at least one year, but was month-to-month. Defendants do not reply to this argument, which is well taken and supported by Michigan law. *See, e.g.*, *Wildbahn v. KMG Prestige, Inc.*, 2016 WL 1038047 at *4 (Mich. Ct. App. Mar. 15, 2016) (explaining that parties' attempt to modify duties imposed by § 554.132 in lease agreement was ineffective because term of lease was month-to-month).

Turning to the analysis of Jackson's claim, the Court must first determine whether the area in question falls within the statute because it is part of the "premises" or a "common area." Next, the Court must identify the intended use of the area. Finally, the Court must determine whether there could be "reasonable difference of opinion" about whether the "conditions made the common area unfit for its intended use." *Trueblood*, 327 Mich. App. at 289 (citing *Allison*, 481 Mich. at 427-431).

The first two considerations need little discussion. The parties do not dispute that the sidewalk and small concrete threshold area were part of the "premises." The sidewalk was located within the bounds of the leased property, and was intended to allow tenants to access the home's front door. And the intended use of a sidewalk is "walking on it" to allow a tenant reasonable access to the property. *Trueblood*, 327 Mich. App. at 290 (citing *Benton v. Dart Properties, Inc.*, 270 Mich. App. 437, 444 (2006)). The only remaining question, then, is if there could be a

9

reasonable difference of opinion about whether the nature of the sidewalk and the presence of ice on it rendered the sidewalk unfit for use.

The accumulation of ice on a sidewalk can, under certain circumstances, render a sidewalk unfit for its ordinary use. A "sidewalk covered in ice" is not fit for walking, but the accumulation of ice and snow must be more than a "mere inconvenience." *Trueblood*, 327 Mich. App. at 290. Evidence of small patches of ice or bare allegations that ice was present and a plaintiff fell will not do to establish a genuine dispute for trial, because MCL § 554.139 does not require a landlord to maintain a sidewalk in an "ideal condition" or in the "most accessible condition possible." *Allison*, 481 Mich. at 430.

Applying those principles to this case, reasonable minds could disagree about whether the condition of the sidewalk rendered it unfit for its intended use.

First, Jackson alleges that the sidewalk was pitched and cracked in a manner that allowed water from the home's gutters to pool and freeze in the area where she fell. Am. Compl., ECF No. 20 PageID.96. The Aloes do not appear to dispute that, at the time of the accident, the sidewalk's pitch and general condition could allow water to pool and freeze. *See, e.g.*, Joann Aloe Dep., ECF No. 31-4, PageID.209. Evidence that a property has a condition that leads to excess accumulation of ice on a stairway or walkway can support a claim that the property was not fit for its intended use, particularly when that defect is within a landlord's control. *See*

10

*Hadden v. McDermitt Apartments*, LLC, 287 Mich. App. 124, 127 (2010) ("Reasonable minds could conclude that the presence of black ice . . . possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger . . . and rendered the stairway unfit for its intended use."); *accord Branch v. D & S Prop. Mgmt., LLC*, 2019 WL 7206105 at *4 (Mich. Ct. App. Dec. 26, 2019) (reversing grant of summary judgment to defendant on MCL § 554.139 claim and noting that the gutter above a stairway on which a plaintiff slipped "was leaking at that time, causing ice to accumulate on the handrail and the stairs"); *cf. Dover v. Oak Park Gardens, LLC*, 2017 WL 4015740, at *4 (Mich. Ct. App. Sept. 12, 2017) (summary judgment in landlords' favor was appropriate where there was "no defect within defendants' control that may have possibly caused or aggravated the icy condition").

Second, the patch of ice extends from the right edge of the sidewalk nearly to the left edge, appearing to cover almost all of the sidewalk's width.[4] And the sidewalk appears to have been the only paved path between the house and the street. Anyone leaving the house and using the sidewalk would have had to confront the ice. *Cf. Wildbahn v. KMG Prestige, Inc.*, 2016 WL 1038047, at *3 (Mich. Ct. App. Mar. 15, 2016)

---

[4] The photographs were taken about four hours after Jackson's fall. Jackson testified that it was roughly 50 degrees that day. ECF No. 31-3, PageID.171. A reasonable juror crediting her testimony could find that the ice patch was larger at noon when Jackson slipped on it.

11

(patches of ice in courtyard were a mere inconvenience because to avoid danger the plaintiff "only needed to take a slightly different path through the remaining portion of the courtyard, which was indisputably clear"). And although Jackson could perhaps have walked on the snow-covered grass or gravel to either side of the icy path, that would appear to bolster the conclusion that the path *itself* was unfit for walking—and would have come with its own attendant hazards.[5]

Finally, Jackson testified that the ice was "black" or "clear" ice, making it particularly hard to see. Contemporaneous photographs corroborate Jackson's testimony: much of the ice patch appears to be dark or clear, and portions of it are hard to see even in daylight. Conditions that cause the accumulation of so-called "black ice" can amount to more than a mere inconvenience. *Hadden*, 287 Mich. App. at 127 (Affirming district court's denial of summary judgment where district court noted that conditions "included black ice, not just snow").

Ultimately, reasonable minds could disagree about whether a sloped section of sidewalk in which clear ice accumulated and spanned

---

[5] To be sure, a plaintiff presented with a similar situation who *saw* the ice but declined to take an obviously safer path by avoiding the sidewalk altogether might be found comparatively negligent or otherwise see their recovery reduced on that basis. *See, e.g., Branch v. D & S Prop. Mgmt., LLC*, 2019 WL 7206105, at *9 (Mich. Ct. App. Dec. 26, 2019) (Gleicher, J., concurring in part and dissenting in part). But here, Jackson testified that she did not see the ice.

nearly the sidewalk's entire width rendered the sidewalk unfit for its intended purpose.

   c. *Whether Defendants had knowledge of the sidewalk's condition is a genuine issue for trial*

Even when under a statutory duty to repair a leased property, a landlord remains liable only for defects she knew about or should have known about. *Raatikka v. Jones*, 81 Mich. App. 428, 430 (1978). The Aloes argue that a landlord has no duty to inspect the premises regularly, and is instead liable only for defects brought to her attention by the tenant or by a casual inspection of the premises. They are correct on this point. *Id.* Finally, Jackson does not dispute that she must show that there is a genuine issue for trial on the question of notice to avoid summary judgment.[6]

The Aloes argue that Jackson's claim is barred for lack of notice because Jackson never reported any problem with the sidewalk or gutters. Defs'. Mot., ECF No. 31, PageID.142-43. Indeed, Jackson testifies that she never noticed excess ice building up where she fell, and never contacted the Aloes about any problem with ice. Jackson does not

---

[6] In *Kodra v. Stoney Creek Vill. Apartments, LLC*, 2017 WL 5503679 at *2 (Mich. Ct. App. Nov. 16, 2017), Judge Beckering, then sitting on the Michigan Court of Appeals, noted in dissent that MCL § 554.139 does not contain an explicit notice requirement, nor had any higher court issued a reported decision finding one to apply under the statute. However, because Jackson accepts that notice is required, and because there are several unreported decisions finding the same, the Court will not discuss this potentially unresolved question of Michigan law.

13

appear to take the position that the Aloes had actual notice of the sidewalk's propensity to accumulate ice. Instead, she seems to argue that the nature of the defect was such that the Aloes should be deemed to have had constructive knowledge of it.

The longer a defect is present and the more obvious it is, the stronger the evidence that a landlord has constructive notice of it. *Kroll v. Katz*, 374 Mich. 364, 372 (1965). Generally, "whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice" is a question of fact for a jury to decide. *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 984 (2007) (citation omitted). Here, a reasonable juror crediting Jackson's evidence could find that the Aloes knew about the sidewalk condition.

First, as Jackson points out, the Aloes had owned the property for about thirty years when Jackson fell. ECF No. 31-4, PageID.206. Further, Joann Aloe admitted that the sidewalk's slope developed gradually over time, and may have been present before the Aloes purchased the house. *Id.* at PageID.209. That a defect existed for a long time tends to support a finding of constructive knowledge. Considering those facts, a reasonable juror could find that the sidewalk condition did not develop suddenly, and could further conclude that it was present and readily apparent long before Jackson's accident.

Second, the purportedly defective section of sidewalk was in plain view—any time the owners visited the property they would necessarily

14

have walked along it. That could support a reasonable juror's conclusion that it would have been readily apparent upon a casual inspection. As Jackson highlights, Ms. Aloe testified that she had last visited the property in August, when Jackson first moved in, about six months before Jackson's accident. *Id.* at PageID.207. Ms. Aloe further testified that photographs of the sidewalk as it was when Jackson fell show a "depression" in the cement, and that the sidewalk was in substantially the same condition when Ms. Aloe last visited in August. *Id.* at PageID.207, 209.

Third, a reasonable fact finder could further conclude that the Defendants should have known that the depression in the sidewalk could lead to an excessive build-up of ice. Ms. Aloe appeared to testify that she was aware that water from melting snow could pool in the depression and freeze:

> Q: [F]rom your years of living at this property, you found that if you didn't clear all the snow on that right side [of the sidewalk] that when the sun comes out, it could melt and it could pool and refreeze right in the middle of the sidewalk there; correct?
>
> A: Yes, not only the right side, the left side as well.

ECF No. 31-4, PageID.209. Ms. Aloe further testified that this was a "typical Michigan thing." *Id.*

The Aloes argue that the terms of the lease required Jackson to notify them immediately of any needed repair. Of course, Jackson's

15

testimony that she had not previously noticed an unusual accumulation of ice in that area and her concession that she never notified the Aloes of any problem both weigh against a finding of notice. But drawing all reasonable inferences in Jackson's favor, as the Court must at this stage, a reasonable juror could credit Jackson's testimony and argument that she had not noticed the buildup because she had only inhabited the property for a single winter.

Considering the evidence presently before the Court, a reasonable fact finder could conclude that the sloping feature of the sidewalk was present long before the date of Jackson's accident, that it was readily discoverable upon casual inspection, and that the Aloes knew or should have known it could lead to the buildup of ice. Accordingly, there is a genuine issue for trial on the question of notice.

## IV. CONCLUSION

For all the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 11) is **DENIED** as to Plaintiff's claims premised on a violation of MCL § 554.139 and common-law premises liability.

Accordingly, this Court's Order of March 15, 2023, ECF No. 38, is hereby **RECONSIDERED** and **AMENDED** as provided herein.

**SO ORDERED**, this 20th day of November, 2023.

BY THE COURT:

s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE